BAKER, Chief Judge,
with whom ERDMANN, Judge, joins (dissenting):
I would reverse this case. In my view, all four Barker v. Wingo factors favor Appellant. Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The second and fourth factors do not weigh heavily in his favor, but they weigh in his favor nonetheless. Thus, if Barker v. Wingo is the test for a Sixth Amendment speedy trial claim, and all four factors weigh in favor of Appellant, I do not see how or why he should not prevail on the underlying Sixth Amendment claim. Therefore, I respectfully dis- _ sent.
Discussion
The Court agrees that Barker v. Wingo provides the analytic framework for addressing Appellant’s speedy trial claim. Barker invites consideration of four factors with no one factor being dispositive: (1) the length of delay; (2) the reasons for the delay; (3) whether the appellant made a demand for a speedy trial; and, (4) prejudice to the appellant. Barker, 407 U.S. at 530, 533, 92 S.Ct. 2182. The factors are related and “must be considered together with such other circumstances as may be relevant.... [C]ourts must still engage in a difficult and sensitive balancing process.” Id. at 533, 92 S.Ct. 2182. The Court further agrees that as provided in Article 62(b), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 862(b) (2012), an Article 62, UCMJ, appeal, such as this one, “shall, whenever practicable, have priority over all other proceedings before [the Court of Criminal Appeals (CCA)].” “Priority” and “practicable” are not statutorily defined, but surely their plain English meaning is clear— the case is supposed to move to the front of the line if feasible.
Where the Court divides is on consideration of the second and fourth factors. First, I disagree on the extent to which the second Barker factor — the reasons for delay— weighs against Appellant. The majority concludes that this factor is “more neutral.” United States v. Danylo, 73 M.J. 183, 188 (C.A.A.F. 2014) (internal quotation marks and citations omitted). It reaches this conclusion based on the determination that the other “main source of delay — the CCA’s delay on the Article 62 appeal — is unexplained.” Id. at 187. According to the majority, the delay is unexplained, because “[d]espite our significant concern about the processing time at the lower court, we are reluctant to pierce the veil of the CCA’s decision-making process and attempt to regulate the day-to-day mechanics of the legal process assigned to the court.” Id. at 187. I share this underlying concern, as first expressed in United States v. Moreno, 63 M.J. 129, 137 (C.A.A.F.2006).
However, this Court need not pierce the deliberative veil of the CCA or, for that matter, Monday morning quarterback the day-to-day mechanics of the CCA to see how this factor weighs in Appellant’s favor. One *191 need only look to the military judge’s findings of fact.[1] These findings of fact include the following:
• The CCA granted the Government’s Article 62, UCMJ, appeal “170 days after the Government originally filed its Article 62 appeal and 191 days after docketing with the CCA.”
• “108 cases were decided by the AFC-CA between the submission of the Article 62 appeal (20 September 2010) and 9 March 2011.”
• “Three of those cases were Article 62(a) appeals and 65 were merits cases.” This was also the only ease “in which the accused was in pretrial confinement.”
• “[S]ince the summer of 2010, the AFC-CA has had four unfilled positions for appellate court judges (out of 9) and one unmanned position for a law clerk (out of 2).”
• Appellant and Government each moved for expedited processing three times while the ease was pending at the CCA.
• On October 16, 2010, the Government “requested oral argument.” But the CCA did not respond until January 14, 2011, when it ordered oral argument for January 20, 2011.
In my view, Appellant should prevail on the second factor based on these factual findings and the absence of any counterbalancing reason or explanation for the delay. For sure, there might well be good reason why the CCA took the time it did to decide this case, even with the extenuating factors of pretrial confinement in the context of an underlying speedy trial claim. An appellate court might reasonably take six months to debate and deliberate on a difficult or complex question of law.[2] However, in the absence of an appropriate reason explaining the delay, and thus where the only facts that are known are those stated above, factor two is not “more neutral”; it favors Appellant. Danylo, 73 M.J. at 188 (internal quotation marks and citation omitted); see United States v. Wilson, 72 M.J. 347, 353 (C.A.A.F.2013) (“The delays identified by the military judge weigh against the Government, however, that weight is minimized when balanced against the Government’s explanations as to the overall time period.”).
Moreover, several additional facts weigh in favor of Appellant when considering the second factor on reasons for delay. One, Appellant was held in pretrial confinement while the Government appealed the military judge’s earlier ruling in favor of Appellant’s speedy trial question. Two, during this period, Appellant asserted his right to a speedy trial and timely appellate review, including priority review in the context of Article 62, UCMJ. In fact, the Government three times joined Appellant in requesting expedited appellate review. Three, the applicable law on speedy trial is settled. And fourth, most importantly, the Government failed to staff the CCA at adequate levels during the pen-dency of Appellant’s Article 62, UCMJ, appeal. For sure, points one and two relate directly to other Barker factors. But they are relevant to factor two addressing the reasons for delay. Why? Because in my view, where an accused is in pretrial confinement and otherwise asserts his right to priority Article 62, UCMJ, review, unexplained delay is not neutral, it cuts in favor of Appellant. Neither the Government nor the majority cite any facts that counterbalance these facts and pull the second factor back to neutral.
The second divide between the majority and dissent is on the question of whether two months of incarceration beyond one’s point of adjudged confinement constitutes Barker *192 prejudice, where an Appellant otherwise prevails on the preceding three factors.[3] In this regard, it is worth noting that the majority and dissent agree on the facts: “Appellant served two months of confinement beyond his adjudged sentence.” Danylo, 73 M.J. at 188.
However, I disagree with the majority on what as a matter of law is required to show Barker prejudice. The Barker Court recognized three interests that could give rise to Sixth Amendment prejudice: “(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defenSb will be impaired.” United States v. Mizgala, 61 M.J. 122, 129 (C.A.A.F.2005) (quoting Barker, 407 U.S. at 532, 92 S.Ct. 2182). To be sure, the Barker Court held that “[o]f these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.” Id. Accordingly, the majority concludes that “[wjhile the first interest weighs in Appellant’s favor, the second and third weigh against him.” Danylo, 73 M.J. at 188. The problem with this conclusion is that while Barker highlights the gravity of prejudice that impairs the defense, it does not do so at the exclusion of the other two interests.
Two months of excessive incarceration is not a long time compared to other periods of incarceration found oppressive under Barker nor is it oppressive in the sense that it is unduly harsh. It is nonetheless time spent above and beyond the actual sentence received, and that is prejudicial where such incarceration is based on unreasonable delay attributable to the government.[4] Thus, it is not logical to conclude that time served in confinement beyond what was lawfully adjudged or should have been served is not oppressive or prejudicial.
Therefore, because I conclude that all four Barker factors’ favor Appellant, he should prevail on his Sixth Amendment claim.

. As the majority notes, "we give substantial deference to the military judge’s findings of fact unless they are clearly erroneous.” Danylo, 73 M.J. at 186 (internal quotation marks, brackets, and citation omitted). The majority has not concluded that any of the military judge's findings are clearly erroneous.

. Indeed, as a general rule "an interlocutory appeal by the Government ordinarily is a valid reason that justifies delay.” United States v. Loud Hawk, 474 U.S. 302, 315, 106 S.Ct. 648, 88 L.Ed.2d 640 (1986). But "delays in bringing the case to trial caused by the Government’s interlocutory appeal may be weighed in determining whether a defendant has suffered a violation of his rights to a speedy trial.” Id. at 316, 106 S.Ct. 648.

. This question arises whether one adopts the ■majority’s or the dissent’s analysis as the majority concludes before addressing the prejudice prong of Barker that Appellant has prevailed on factors one and three, with the second factor being "more neutral.” Danylo, 73 M.J. at 188 (internal quotation marks and citation omitted).

. When delays in the processing of a case are in the course of ordinary business and trial strategy, that delay cannot be held against the government. United States v. Ewell, 383 U.S. 116, 120, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966) (noting that "ordinary procedures for criminal prosecution are designed to move at a deliberate pace. A requirement of unreasonable speed would have a deleterious effect both upon the rights of the accused and upon the ability of society to protect itself.”). Article 62(c), UCMJ, is consistent with this view and excludes ”[a]ny period of delay-resulting from an appeal under this section ... in deciding any issue regarding denial of a speedy trial.” However, Article 62, UCMJ, does not purport to eliminate the Sixth Amendment right to a speedy trial or give the government a pass on the application of Barker v. Wingo.