DICKINSON, Presiding Justice,
dissenting:
¶ 40. I believe it .is no secret among the bench and bar that this Court has no interest in protecting the constitutional right to a speedy trial, or in enforcing speedy-trial law.[2] • As I have stated before, this Court has an amazing propensity to fashion a new rule each time a defendant appears with a legitimate speedy-trial *1278 claim.[3] I call it this Court’s “Whack-A-Mole” jurisprudence.[4] For those who— regardless of the facts or law-support this Court’s efforts to reject every speedy— trial claim, today’s decision will not disappoint.
¶ 41. Time after time this Court has rejected speedy-trial claims because the defendant failed to show actual prejudice.[5] James Newell has done so. The only eyewitness went missing during the 607-day delay. But because Newell cross-examined that witness in a prior trial — on a different charge — the plurality finds insufficient prejudice. So the bar has been moved once again, a Mississippi defendant must now show extreme prejudice, and I must respectfully dissent.
FACTS AND PROCEDURAL HISTORY
¶ 42. Newell killed Adrian Boyette.[6] He was indicted for deliberate-design murder, but the jury chose the lesser-included offense of manslaughter.[7] He appealed, and we reversed his conviction and remanded for a new trial.[8] The mandate issued December 23, 2010, and, on remand, the circuit court set Newell’s second trial for February 22, 2011.
¶ 43. But Newell was not provided the first' trial’s transcript, so the circuit judge reset the trial for May 16, and the assistant district attorney’s scheduling conflict led to another delay to August 16. The docket reflects that the August 16 trial date was reset, but the record does not give a reason, although the State has admitted that this continuance was granted because it was not prepared for, trial.
¶ 44. On September 2, Newell demanded a speedy trial. On November 1, Newell moved for recusal because of statements the judge had made in the first prosecution. Two days later, the circuit judge transferred the case to another judge for “judicial economy.” That same day, a trial date was set, but the record does not reflect the new date.
¶ 45. On February 15, 2012, Newell moved to quash his indictment. And on February 27, the circuit judge moved the trial to May 29 because “the Court was unable to resolve and the Defendant filed new dispositive motions that were not heard this term.” Between March 9 and April 19, Newell filed numerous pro se motions. On May 14, the judge held a hearing on the motions.
¶ 46. Then, on May 24, Newell moved to dismiss for failure to provide a speedy trial. The State responded the next day. And on May 29, the circuit judge denied the defendant’s motion. But when the parties appeared for trial that morning, the State announced for the first time that it intended to the use the transcript testimony of two witnesses, including the only *1279 eyewitness, and Newell requested a continuance, arguing that he intended to ask different questions on cross-examination. The case then went to trial on August 21.
ANALYSIS
¶47. The Sixth Amendment to the United States Constitution and Article 3, Section 26 of the Mississippi Constitution guarantee defendants a speedy trial.[9] This right applies on remand after we reverse a conviction on appeal.[10]
¶ 48. We review speedy-trial claims using the four-part test articulated by the United States Supreme Court in Barker v. Wingo.[11] Under the Barker test, we must balance four factors: (1) the length of the delay, (2) the reason for the delay, (3) the defendant’s assertion of his right, and (4) any prejudice the defendant suffered.[12] No one factor must exist to establish a speedy-trial violation, and the factors “must be considered together with such other circumstances as may be relevant.”[13]

The Length of the Delay

¶ 49. When we reverse a conviction and remand for a new trial, the speedy-trial clock starts when the mandate issues in the first appeal.[14] The mandate in New-ell’s appeal issued December 23, 2010. Trial occurred on August 21, 2012. So 607 days ran on the speedy-trial clock. “A delay of eight months or longer is presumptively prejudicial.”[15] So this factor weighs in Newell’s favor.

The Reason for the Delay

¶ 50. With a presumptively prejudicial delay, the State bears the burden to show good cause.[16] Absent good cause, any delay not attributable to Newell must weigh against the State.[17]
¶ 51. The mandate issued December 23, 2010, and Newell’s retrial was set for February 22, 2011. The United States Supreme Court has held that neutral delays, like those based on crowded dockets, weigh against the State because it bears the burden to bring the accused to trial.[18] If a neutral delay based on a crowded docket weighs against the State, so too must the delay between the mandate and the first available trial date. So the first sixty-one days weigh against the State.
¶ 52. Then, trial was moved to May 16, 2011, because Newell was not provided the trial transcript. No evidence suggests that Newell caused the delay in obtaining the transcript or explains good cause for that delay. So this eighty-three-day period also must be counted against the State because it failed to provide evidence of good cause.
*1280 ¶ 53. Next, trial was continued to August 16,2011, because the assistant district attorney had a scheduling conflict. Because the prosecutor’s conflict caused this ninety-two-day delay, it weighs against the State.
¶ 54. The August 16 trial was continued at the State’s request, because it was not prepared. The State admitted that this delay extended to November 1, 2011, or seventy-seven days.
¶ 55. On November 1, Newell moved for recusal. The judge transferred the case two days later. A trial date was set that same day, but the record does not reflect the date set. On February 27, 2012, the new judge .moved the trial to May 29, 2012, because Newell had filed several new motions. So this 210-day period weighs against Newell.
¶56. Finally,'the parties appeared on May 29 for trial. At that time, the State announced its intent to use transcript testimony from two witnesses, including the only eyewitness. So Newell — having been blindsided by the State — then requested a continuance, and the judge reset the trial for August 21, when it occurred. I would weigh this eighty-four-day delay against the State because the State failed to disclose its intent to use transcripts until the morning of trial.
¶ 57. So, of the 607-day total, delay, the State bears responsibility for 397 days, more than half the total delay. This portion, standing alone, far exceeds the presumptively prejudicial 270-day mark. So this factor weighs in Newell’s favor as well.

The Defendant’s Assertion of His Right

¶ 58. “It is well settled that the State bears the burden of bringing a defendant • to trial.”[19] So failure to assert the right does , not waive a speedy-trial claim.[20] That said, assertion weighs in the balancing test, and when the defendant asserts his right, it “is entitled to strong evidentia-ry weight in determining whether the defendant is being deprived of the right.”[21]
¶ 59. Further, demanding a speedy trial and a moving to dismiss on speedy-trial grounds are not the same thing.[22] Newell satisfied this dictate, demanding a speedy trial on September 2, 2011 — before the presumptively prejudicial 270-day mark— and moving to dismiss on speedy-trial grounds May 24, 2012. Because Newell both demanded a speedy trial before the 270-day mark and moved’ to dismiss after he was denied a speedy trial, this factor weighs in his favor.[23]

Prejudice

¶ 60. “Prejudice, of course, should be Assessed in the light of the interests of defendants which the speedy trial right was designed to protect.”[24] The United States Supreme Court “has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired.”[25] Actual prejudice to the *1281 defense at trial is the most serious.[26] And the Barker court recognized that “[i]f witnesses die or disappear during a delay, the prejudice is obvious.”[27]
¶ 61. During the first trial, the State used Jason Hollis’s testimony. He was the only eyewitness to the shooting. The State pursued a conviction for murder and Newell argued that he killed in self-defense. Hollis, the victim’s friend, was important to the State’s case. Though he corroborated Newell’s claim that the victim followed Newell to his truck and attacked him, Hollis’s testimony contained an important distinction from Newell’s. Hollis testified that the victim stepped back from Newell with his hands in the air before Newell shot him.
¶62. In the second trial, the State— now seeking a manslaughter conviction— sought Hollis’s testimony once again. But, during the delay, Hollis went missing. So, on the morning of trial, the State disclosed that it planned to use a transcript from the first trial. As the United States Supreme Court has said, where a witness “disappears] .during a delay, the prejudice is obvious,”[28]
¶ 63. Newell lost the opportunity to cross-examine Hollis, the State’s key witness, in his second jury’s presence, and his counsel explained that he intended to pursue a different line of cross-examination with Hollis in the second trial because he was now defending a manslaughter charge. So this factor must weigh against the State as well.
¶ 64. Because every Barker factor weighs in Newell’s favor, I would find that his constitutional right to a speedy trial was violated. I dissent.
KITCHENS AND KING, JJ., JOIN THIS OPINION. COLEMAN, J., JOINS THIS OPINION IN PART. -. ‘

. See Myers v. State, 145 So.3d 1143, 1152 (Miss.2014) (Dikinson, P.J., concurring in part and dissenting in part) (“If history teaches us anything, it is that this Court has little interest in a defendant's constitutional right to a speedy trial.”); Johnson v. State, 68 So.3d 1239, 1247 (Miss.2011) (Dickinson, P.J., dissenting) ("[T]oday's final, fatal blow mercifully puts the criminal-defense bar out of its misery. Whereas previous decisions have been less than clear, today’s plurality opinion is as subtle as a stick of dynamite— the Sixth-Amendment right to a speedy trial in Mississippi is dead.”).

. Taylor v. State, 162 So.3d 780, 790 (Miss.2015) (Dickinson, P.J., dissenting) ("Today's majority provides an excellent analysis of this Court’s opinions over the years, which seemingly have played Whack-A-Mole with the Barker factors. Every time a factor pops up that appears to favor the defendant, this Court whacks it into conformity with the desire to affirm.”).

. Id.

. Johnson, 68 So.3d at 1246 (quoting Stevens v. State, 808 So.2d 908, 918 (Miss.2002)) (" ‘where the delay is neither intentional nor egregiously protracted, and there is an absence of actual prejudice to the defense, the balance is struck in favor of rejecting a speedy trial claim.'").

. Newell v. State, 49 So.3d 66, 68-70 (Miss.2010).

. Id.

. Id. at 78.

. U.S. Const, amend. VI.; Miss. Const. art. 3, § 26.

. Bailey v. State, 78 So.3d 308, 321 (Miss.2012).

. Id. at 321 (citing Barker v. Wingo, 407 U.S. 514, 531, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972)).

. Bailey, 78 So.3d at 321 (citing Barker, 407 U.S. at 530, 92 S.Ct. 2182).

. Barker, 407 U.S. at 533, 92 S.Ct. 2182.

. Bailey, 78 So.3d at 321 (citing Duplantis v. State, 708 So.2d 1327, 1334 (Miss.1998)).

. Bailey, 78 So.3d at 321 (citing Smith v. State, 550 So.2d 406, 408 (Miss.1989)).

. Bailey, 78 So.3d at 321 (citing Stevens, 808 So.2d at 916).

. Bailey, 78 So.3d at 321 (quoting Duplantis 708 So.2d at 1335).

. Barker, 407 U.S. at 531, 92 S.Ct. 2182 ("A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.”).

. Bailey, 78 So.3d at 321 (citing Stevens, 808 So.2d at 916).

. Myers v. State, 145 So.3d 1143, 1151 (Miss.2014) (citing Barker, 407 U.S. at 528, 92 S.Ct. 2182).

. Barker, 407 U.S. at 531-32, 92 S.Ct. 2182.

. Perry v. State, 637 So.2d 871, 875 (Miss.1994).

. Barker, 407 U.S. at 531-32, 92 S.Ct. 2182.

. Id. at 532, 92 S.Ct. 2182.

. Id. (citing United States v. Ewell, 383 U.S. 116, 120, 86 S.Ct. 773, 776, 15 L.Ed.2d 627 (1966); Smith v. Hooey, 393 U.S. 374, 377-78, 89 S.Ct. 575, 576-77, 21 L.Ed.2d 607 (1969); Klopfer v. North Carolina, 386 U.S. 213, 221-22, 87 S.Ct. 988, 992-93, 18 L.Ed.2d 1 (1967)).

. Barker, 407 U.S. at 532, 92 S.Ct. 2182.

. Id.

.Id.